**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| JESUS VERDE HERNANDEZ, et al., individually and on behalf of others similarly situated,<br>*Plaintiffs*,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>*Defendants*. | **CV-26-301-GF-BMM**<br><br>**ORDER** |

## INTRODUCTION

Plaintiffs Jesus Verde Hernandez, Jose Alfredo Martinez Alaniz, Lizet Hoguin-Vega, and Fredy Arnulfo Diaz Coreas (collectively "Plaintiffs") request the Court to require that the Department of Homeland Security ("DHS" or "Defendants") agents comply with federal law by making an individualized probable cause determination that a person is (1) in violation of civil immigration law and (2) presents a flight risk, before conducting a warrantless immigration arrest. (Doc. 6.) The Court held a hearing on the motion on October 14, 2026. (Doc. 15.)

## BACKGROUND

### I. Legal Framework.

The district court in *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147 (D. Or. 2026), recently faced a similar claim. The Court also begins with a brief background on the purpose and scope of the Fourth Amendment and its application in the immigration context. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Constitution amend. IV. This protection against unreasonable searches and seizures extends to both citizens and non-citizens. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). *Verdug-Urquidez* states unequivocally that non-citizens "receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Id.* "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (citation omitted).

A seizure involves "physical force or a show of authority that in some way restrains the liberty of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (quotation marks, alteration, and citation omitted). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in the view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554

(1980). This prohibition generally requires law enforcement officers to have a warrant or probable cause before making an arrest. *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

The U.S. Supreme Court has recognized that the warrant "traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). In turn, this independent assurance arises from the "neutral and detached" position of the issuing judicial officer. *Id.* The involvement of this neutral and detached judicial officer supports "the whole point of the basic rule" that recognizes that "prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigation." *Coolidge v. New Hampshire*, 403 U.S. 443, 449 (1971).

As applied to the immigration context, courts have concluded that immigration authorities may arrest people for civil immigration removal, "consistent with the Fourth Amendment," pursuant to an administrative warrant issued by an executive official, rather than by a judicial officer. *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 825 (9th Cir. 2020); 8 C.F.R. § 287.5(e)(2). The ICE training materials make clear, however, that these types of administrative warrants "do not authorize entry into a dwelling without consent." *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 983 (C.D. Cal. 2024). Moreover, absent an

administrative or judicial warrant, a "seizure of a person must be supported by probable cause particularized to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). An arresting officer may not undercut this probable cause particularized to the person "by simply pointing to the fact that coincidentally there exists probable cause to seize another or to search the premises where the person may happen to be." *Id.*

A noncitizen may be arrested and detained under § 1226 only "on a warrant issued by the Attorney General." 8 U.S.C. § 1226(a) (citation modified). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)." *Brice v. Gantt, et al.,* No. CIV-26-1421-D, 2026 WL 2243982, at *3 (W.D. Okla. Aug. 4, 2026) (quoting *Sergio P. v. Bondi*, No. 26-CV-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) (citation modified)).

An immigration officer "must have reasonable suspicion" to stop a person and question them "about their citizenship and immigration status . . . [and] any further detention . . . must be based on . . . probable cause." *Brignoni-Ponce*, 422 U.S. at 881-82, 884. To be clear, the Fourth Amendment "forbids stopping or detaining persons for questioning about their citizenship on less than reasonable suspicion." *Id.* The Immigration and Naturalization Act ("INA") and its

implementing regulations make clear that immigration officers must obtain arrest warrants before making an arrest for a suspected immigration violation. 8 C.F.R. § 287.8(c)(2)(ii).

One exception exists to the warrant requirement under § 1226. Authorized officers may "interrogate any alien or person believed to be an alien" concerning that person's "right to be or to remain in the United States," and can arrest that person "if [the officer] has reason to believe that the [person] . . . is in the United States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and *is likely to escape* before a warrant can be obtained for his arrest." 8 U.S.C.A. § 1357(a)(1), (2) (emphasis added). An authorized officer's determination that an arrested person "is likely to escape" requires that the arrested person must "be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." *Id.*; *see Makuiza v. Wesling*, 826 F. Supp. 3d 176, 180 (D. Me. 2026).

"[A] custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued *post hoc*," when arrests properly are made without a warrant based on an authorized officers' perception of likely escape. *Makuiza*, 826 F. Supp. 3d at 180 (citing 8 C.F.R. § 287.3(d)). In other words, a proper arrest pursuant to §1226

requires either an arrest warrant to be issued before arrest, or a reasonable belief by an authorized officer upon initial investigation that a noncitizen is in the United States in violation of the law and *presents a risk of escape* if not arrested before a warrant can be obtained. The phrase reasonable belief is "equivalent to constitutionally required probable cause." *Tejeda-Mata v. Immigr. & Naturalization Serv.,* 626 F. 2d 721, 725 (9th Cir. 1980). Probable cause "must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

## II. Factual Background.

Defendants started pushing for mass immigration arrests throughout the United States in January of 2025, resulting in a change in policy that violates the INA. *See Aguilar Peralta v. Dep't of Homeland Sec*., No. 26-cv-337, 2026 WL 2069917, at *19 (S.D. Ohio July 17, 2026) (taking judicial notice of "Defendants' public statements as conveyed in other cases"). Courts around the country have concluded that Defendants' policy of arresting people without first assessing the person's flight risk remains unlawful. *See, e.g., Vasquez Perdomo v. Mullin*, No. 25-cv-5605, 2026 WL 2751388, at *19 (C.D. Cal. Sept. 2, 2026); *M-J-M-A-,* 822 F.Supp.3d at 1178; *Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 44 (D.D.C. 2025) (finding that "plaintiffs have established a substantial likelihood of an unlawful policy and practice by defendants of conducting warrantless civil immigration

arrests without probable cause"); *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1234 (D. Colo. 2025) ("[D]efendants likely have a pattern or practice of ignoring the individualized flight risk determinations mandated by [law]" and "have successfully shown that their cases are not isolated incidents, but part of a larger policy, pattern, or practice by ICE in this state.")

The Court previously certified a class action that included a declaration that Defendants' warrantless arrests without a pre-arrest individualized determination of probable cause of flight risk qualify as unlawful arrests. *Hernandez v. Crosson*, No. 4:26-cv-280, 2026 WL 2280918 at *4–5 (D. Mont. Aug. 7, 2026) ("*Hernandez I*") (finding Defendants violated 8 U.S.C. § 1357(a)(2) in arresting Jesus); *Hernandez v. Crosson*, No. 4:26-cv-280, 2026 WL 2568523, at *13 (D. Mont. Aug. 31, 2026) ("*Hernandez II*") (certifying class action and entering declaratory judgment); *Hernandez v. Slaughter*, No. 4:26-cv-280, 2026 WL 2720390 (D. Mont. Sept. 15, 2026).

The Court has further granted habeas relief for over 40 people, including Plaintiffs, arrested by DHS within the District of Montana. *See Release Orders, Hernandez v. Slaughter*, No. 4:26-cv-280 (D. Mont. 2026), (Docs. 16, 32, 95–118, 134–138, 157); *Release Order, De La Cruz v. Crosson*, 4:26-cv-289 (D. Mont. 2026 Aug. 19, 2026), (Doc. 13); *Release Orders, Martinez Alaniz v. Slaughter*, No. 4:26-cv-298 (D. Mont. Sept. 24, 2026), (Docs. 11–15).

Plaintiffs brought this action against Defendants on September 25, 2026. (Doc. 1.) Plaintiffs, on behalf of themselves and all similarly situated individuals, bring claims for immigration officers' alleged violations of the Administrative Procedure Act (5 U.S.C. § 706(2)), 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c)(2)(i)-(ii), 8 C.F.R. § 287.3(d), the *Accardi* doctrine, and the *Castanon Nava* Broadcast policy. (Doc. 1.) Plaintiffs further request the Court to grant them preliminary relief. (Doc. 6.) Plaintiffs request of preliminarily relief would entail the Court requiring DHS agents to comply with federal law by making a probable cause determination that a person is (1) in violation of civil immigration law and (2) presents a flight risk, before conducting a warrantless immigration arrest. (*Id.*)

## LEGAL STANDARD

District courts enjoy discretion regarding whether to grant or deny a temporary restraining order ("TRO"). *Miss Universe, Inc. v. Flesher,* 605 F. 2d 1130, 1132-33 (9th Cir. 1979); *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). Federal Rules of Civil Procedure 65 governs preliminary injunctions and TROs. The standard for issuing a TRO proves "essentially identical" to the standard for granting a preliminary injunction. *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1154 (D. Or. 2020); *see also Stuhlberg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.).

TROs and preliminary injunctions remain extraordinary remedies that may be awarded only upon a clear showing that the plaintiff would be entitled to relief. *Winter*, 555 U.S. at 22. A party seeking a TRO or a preliminary injunction must establish the following four elements: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Id.* at 20.

**DISCUSSION**

Plaintiffs argue that they are entitled to a TRO, preliminary injunction, and a 5 U.S.C. § 705 stay because all four factors weigh in favor of preliminary relief. (Doc. 6 at 19.) Defendants contend that Plaintiffs fail to establish the *Winter* requirements. (Doc. 11 at 9.) Defendants request that the Court deny Plaintiffs' application for a TRO, preliminary injunction, and a 5 U.S.C. § 706 stay. (*Id.*) The Court must evaluate whether Plaintiffs have satisfied the requirements for a TRO, preliminary injunction, and a 705 stay under Fed. R. Civ. P. 65 and *Winter*.

**I. Whether Plaintiffs are likely to succeed on the merits.**

Defendants argue specifically that Plaintiffs fail to establish Plaintiffs are likely to succeed on the merits for the four following reasons: (1) Plaintiffs lack standing to enjoin warrantless arrests based on speculative future injuries; (2) the INA strips the Court of jurisdiction to hear Plaintiffs' claims; (3) Plaintiffs have

failed to show that they are challenging a final agency action under the APA; and (4) Plaintiffs seek an impermissible follow the law injunction. (Doc. 11 at 9.) The Court first will address these arguments then evaluate the likelihood of success of Plaintiffs' claims.

**A. Whether Plaintiffs lack standing.**

To meet the criteria for standing a plaintiff must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision. *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020). An injury must be "concrete, particularized, and actual or imminent" to support standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *Melendres v. Arpaio*, 695 F. 3d 990, 997 (9th Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). A plaintiff can satisfy this burden by showing that the alleged "harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' federal rights.'" *Id.* at 998 (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001)).

Defendants argue that Plaintiffs fail to establish a practice and policy of Defendants conducting warrantless arrests in the District of Montana. (Doc. 11 at

17.) Defendants contend that Plaintiffs rely heavily on the district court's findings in *Escobar Molina v. DHS*, 1:25-cv-03417-BAH, 2025 WL 3465518 (D.D.C. Dec. 2, 2025), and, therefore, cannot establish standing because Plaintiffs' allegations of an unlawful enforcement policy take place within a different federal judicial district. (Doc. 11 at 17.) In *Escobar*, DHS officers made statements regarding the enforcement policy of warrantless arrests. *Escobar*, 2025 WL 3465518, at *22-25. The court relied on these statements and the statements led the court to conclude that an unlawful policy of DHS officers making unlawful arrests existed. *Id.* at *24. The court further relied on "over two dozen declarations describing roughly 40 warrantless civil immigration arrests conducts without the requesting probable cause findings." *Id*. at *47. Defendants argue that Plaintiffs' alleged failure to prove the existence of a policy and practice to make warrantless arrests precludes Plaintiffs from meeting the requirements for standing because Plaintiffs fail to establish sufficient likelihood that they will be wronged again in a similar way. (Doc. 11 at 18.)

The Court recognizes that the court in *Escobar* had evidence that Plaintiffs have yet to introduce. The Court has adjudicated over 50 separate warrantless arrests made without the proper warrantless arrest requirements since July 31, 2026. *See generally Hernandez v. Slaughter*, No. 4:26-cv-280 (D. Mont. 2026). Defendants contend that Plaintiffs' allegations demonstrate unconnected

encounters that do not qualify as an official, routinely applied, district-wide warrantless arrest pattern and practice. (Doc. 11 at 18.) Plaintiffs cite to five separate courts finding that the plaintiffs had established sufficient evidence that DHS engaged in a practice and policy of making unlawful warrantless arrests. *M-J-M-A-*, 822 F. Supp. 3d at 1175 (finding policy and practice of unlawful immigration arrests in Oregon); *Escobar Molina*, 811 F. Supp. at 33 (same for D.C.); *Aguilar Peralta*, 2026 WL 2069917, at *23 (same for Ohio); *Ramirez Ovando v. Noem*, 810 F. Supp. 2d 1209, 1235–36 (D. Colo. 2025) (same for Colorado); *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025) ("UFW") (same for California).

Defendants fail to cite evidence regarding the differences between its operations in the District of Montana and the federal districts in which courts have found that an unlawful policy and practice exists. Defendants only argue that Plaintiffs' failure to introduce requisite evidence precludes Plaintiffs from proving the presence of a practice and policy occurring in the District of Montana. The fact that Defendants are engaging in this conduct in at least five other federal districts proves relevant to the Court's analysis of Defendants' operations in the District of Montana. The same policy and practice has surfaced in the District of Montana from July 2026 to the present.

The Court found a majority of the arrests since July 2026 conducted by DHS in Montana were made without warrants and Defendants failed to perform adequately an individualized escape risk assessment. The Court declines to conclude that Defendants' warrantless arrests in Montana qualify as unconnected isolated arrests. Defendants have conducted similar operations involving warrantless arrests in federal districts across the country. *M-J-M-A-*, 822 F. Supp. at 1175; *Escobar Molina*, 811 F. Supp. at 33; *Aguilar Peralta*, 2026 WL 2069917, at *23; *Ramirez Ovando*, 810 F. Supp. 2d at 1235-36; *UFW*, 785 F. Supp. 3d at 735. The arrests in the District of Montana do not qualify as unconnected encounters. The current landscape of arrests in the District of Montana combined with the same practice in other federal districts leads the Court to conclude that Plaintiffs have established Defendants' use of a policy and practice of making unlawful arrests.

Defendants further argue that Plaintiffs cannot show standing for the following reasons: (1) Plaintiffs fail to establish that they will be arrested again without probable cause of an immigration law violation or an individualized likelihood of escape determination; and (2) Plaintiffs fail to meet their burden that they face a "real and immediate" threat of being harmed by an alleged practice and policy of warrantless arrests taking place in the District of Montana. (Doc. 11 at 18.)

Defendants rely heavily on *Lyons*. In *Lyons*, Police officers stopped the plaintiff for a traffic violation. *Lyons*, 461 U.S at 97. Officers then seized the plaintiff and placed him in a chokehold. *Id*. The U.S. Supreme Court determined prospective relief to be an inappropriate remedy because the plaintiff lacked standing. *Id*. at 105. The U.S. Supreme Court noted that "to establish an actual case or controversy in this case, [the plaintiff] would have had not only to allege that he would have another encounter with the police but also . . . that the City ordered or authorized police officers to act in such manner." *Id.* at 105-06. The plaintiff in *Lyons* failed to establish a practice and policy of police officers placing Los Angeles residents in chokeholds. *Id.*

This case presents similar facts to *Melendres v. Arpaio,* 695 F. 3d 990 (9th Cir. 2012). The defendants in *Melendres* engaged in a "pattern and practice" of conducting unlawful immigration stops based solely on reasonable suspicion of unlawful presence. *Id*. at 998. The defendants subjected the plaintiffs to unlawful stops as part of this pattern and practice. *Id*. The plaintiffs could not avoid the stops by avoiding illegal conduct because the stops were not premised on reasonable suspicion of criminality. *Id*. at 1000. As such, the plaintiffs were sufficiently likely to be stopped again and the Ninth Circuit determined plaintiffs had standing to obtain prospective injunctive relief enjoining the practice of unlawful stops. *Id*. at 997–98.

Defendants pattern and practice policy in the District of Montana and in other federal districts represents evidence that Plaintiffs remain vulnerable to this practice simply by being in the United States. Plaintiffs cannot avoid these arrests by not engaging in conduct that would give rise to probable cause for their arrests. This fact applies when these unlawful arrests are premised on Defendants' lack of probable cause. *Id*. at 100. Defendants' practice and policy of targeting Plaintiffs and conducting warrantless arrests gives rise to a sufficient likelihood of recurring harm.

Defendants further argue that the Court's previous orders mooted Plaintiffs' claims and prevented a realistic threat of repetition of harm to Plaintiffs. (Doc. 11 at 16-17.); *See Hernandez v. Crosson*, No. 26-cv-280-BMM (D. Mont.) (Docs. 16, 202); *Martinez Alaniz v. Slaughter*, No. 26-cv-298-BMM (D. Mont.) (Docs. 13, 15.) (The Court prohibited Defendants from re-detaining Plaintiffs "during the pendency of [their] current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations."). The Court concludes that Plaintiffs show a realistic threat of being unlawfully arrested based on the Court's above findings regarding the current pattern and practice in the District of Montana.

The Court's previous orders do not prohibit Defendants from re-arresting Plaintiffs. *Id*. The Court's orders prohibit Defendants from re-detaining Plaintiffs subject to § 1226(a) after an arrest. Defendants have 48 hours to conduct a custody determination after a warrantless arrest. 8 C.F.R. § 287.3(d). Defendants still may conduct a warrantless arrest and temporarily detain Plaintiffs even if Defendants eventually must release them. Nothing categorically exempts Plaintiffs from Defendants' unlawful policy. The Court concludes Plaintiffs have met the requirements for standing. *Melendres*, 695 F. 3d at 990, 997.

**B. Whether the INA strips the Court of jurisdiction to hear Plaintiff's claims.**

Defendants argue that the Court lacks jurisdiction because of 8 U.S.C. § 1252(a)(5), (b)(9), & (g). (Doc. 11 at 19.) Defendants argue that a district court lacks jurisdiction to consider the claim if the claim challenges a decision to detain a person "in the first place or to seek removal." The claim instead must be reviewed through the administrative process. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Defendants argue that the arrests qualify as actions taken to remove Plaintiffs from the United States because they are decisions to "detain them in the first place and seek their removal." *Id.*

Section 1252(a)(5) explains that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an *order of removal* entered or issued under any provision of this

chapter." 8 U.S.C. § 1252(a)(5) (quoting *Avila v. Warden, Golden State Annex*, 2026 WL 1765353, at *2 (E.D. Cal. June 18, 2026)). Petitioners are challenging Defendants' alleged unlawful policy that relates strictly to unlawful arrests, not an order of removal. *Id*. The Court concludes that § 1252(a)(5) does not bar the present action.

The Ninth Circuit has explained that "[Section] 1252(b)(9) 'has built-in limits,' specifically, 'claims that are independent of or collateral to the removal process do not fall within the scope 1252(b)(9).'" *Avila v. Warden, Golden State Annex*, No. 26-cv-04274, 2026 WL 1765353, at *2 (E.D. Cal. June 18, 2026) (quoting *Gonzalez v. U.S. Immigr. & Customs Enf't,* 975 F.3d 788, 810 (9th Cir. 2020)). *Gonzalez* ruled that the district court had jurisdiction over the plaintiffs' claims because the claims did not "ask for a review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Gonzalez*, 975 F.3d at 810 (quoting *Dept. of Homeland Sec. v. Regents of the U. of California,* 591 U.S. 1, 19 (2020)). The claims here relate to Defendants' policy of unlawful arrests. The requested preliminary injunctive relief sought here does not relate to the removal proceedings. The Court finds these cases to be instructive. The Court concludes that § 1252(b)(9) does not bar the present action.

Section 1252(g) provides that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any [person] arising from the decision or action by the Attorney General to *commence proceedings, adjudicate cases, or execute removal* orders against any [person] under this chapter." *See* 8 U.S.C. § 1252(g) (emphasis added). The Ninth Circuit has explained this statute should be read "narrowly" and applied "only to three discrete actions that the Attorney General may take including: the 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Avila*, 2026 WL 1765353 at *2 (quoting *Ibarra-Perez v. United States*, 154 F.4th 989, 996, 1005-07 (9th Cir. 2025) (emphasis in original)). Section 1252(g) does not prohibit challenges to unlawful practices merely because these alleged unlawful practices connect in some fashion to removal orders. *Ibarra-Perez*, 154 F.4th at 997. The Court concludes that § 1252(g) does not bar the present action. *Id*.

Defendants can commence, adjudicate, or execute removal proceedings regardless of whether they arrest someone. *See Escobar Molina*, 811 F. Supp. 3d at 41 (noting that removal proceedings commence by issuing notice to appear, not arrest). Numerous courts have rejected Defendants' attempt to distinguish *Jennings* on the grounds that an arrest constitutes a decision to detain someone in the first

place. *Escobar Molina*, 811 F. Supp. 3d at 40 (collecting cases); *cf. Orozco-Ramirez v. Visser*, 834 F. Supp. 3d 1053, 1063 (D. Mont. 2026) ("This statement represents an overgenerous interpretation of dicta"). Plaintiffs challenge Defendants' unlawful policy of arresting people without a warrant or an individualized flight risk determination. (Doc. 14 at 11.) The Court concludes that Plaintiffs' claims remain collateral to the removal proceedings and thereby allow the Court to exercise its jurisdiction to hear Plaintiffs' claims. *Gonzalez*, 975 F.3d at 810.

**C. Whether the Defendants unlawful warrantless arrests are reviewable under the APA.**

Judicial review remains available under the APA only for "final agency action." 5 U.S.C § 704; *M-J-M-A-*, 822 F. Supp. 3d at 1177. The U.S. Supreme Court has articulated "two conditions that generally must be satisfied for agency action to be 'final' under the APA." *Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citing *Bennett v. Spear*, 520 U.S. 154 (1997)). "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177 (internal citation omitted). "[S]econd, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78 (internal quotations omitted). The APA thus permits courts to consider only those claims that challenge discrete, "identifiable" final

actions with "concrete effects." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 890 (1990). Defendants argue that Plaintiffs seek to challenge actions that fail to meet either condition. (Doc. 11 at 30.)

**1. Whether the consummation of the Agency's decision-making process meets the criteria for final action under the APA.**

Defendants argue that Plaintiffs' claims do not fall under the APA because Plaintiffs challenge an alleged established practice of unlawful actions rather than a written policy. (Doc. 11 at 27.) Defendants cite *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 877-78 (1990), arguing that the mere fact an agency has taken multiple similar actions does not suffice to show that a different, discrete final agency action exists to knit them all together. Defendants further argue that when applying *Lujan*, courts reject APA claims like the ones in this case where a plaintiff (1) identifies several discrete, allegedly unlawful acts; (2) claims that a common pattern, policy, or practice underlies all the acts; and (3) attempts to challenge the purported pattern, policy, or practice. *See, e.g.*, *Nat'l Treasury Emps Union v. Vought*, 149 F.4th 762, 783-84 (D.C. Cir. 2025); *Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014). Defendants contend that Plaintiffs have failed to meet the first condition for final agency action due to Plaintiffs' inability to show that the purported wrongful pattern and practice unlawful arrest results from a concrete, identifiable, consummated decision-making process. (Doc. 11 at 28.)

Plaintiffs counter that APA review covers a much more expansive list of agency actions that comprehends "every manner in which an agency may exercise its power." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt*., 460 F.3d 13, 19 (D.C. Cir. 2006) (*quoting Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001)). Plaintiff further argues that policies "need not be written, or even made known to the public, to be judicially reviewable." *Washington v. U.S. Dep't of Homeland Sec*., 614 F. Supp. 3d 863, 872 & n.11 (W.D. Wash. 2020) (collecting cases); *see also Venetian Casino Resort, L.L.C. v. EEOC,* 530 F.3d 925, 929–31 (D.C. Cir. 2008) (holding policy reviewable where "the record leaves no doubt the [agency] has a policy" even where "the details of the . . . policy are still unclear"); *LaDuke v. Nelson,* 762 F.2d 1318, 1327 n.12, 1331 (9th Cir. 1985) (affirming injunction based on testimony as to the existence of an unlawful policy despite contradicting agency's official policy).

An agency's policy, pattern, or practice may be considered when determining whether its conduct amounts to final agency action. *Ecology Ctr., Inc. v. U.S. Forest Serv.,* 192 F.3d 922, 924-25 (9th Cir. 1999). Both logic and law require unwritten policy to be reviewable. *M-J-M-A-*, 822 F. Supp. 3d at 1177-78. The Court finds that Defendants have adopted the same policy and practice of unlawful warrantless arrests in the District of Montana that courts have reviewed and enjoined in other federal districts. *M-J-M-A-,* 822 F. Supp. 3d at 1178–82;

*Escobar Molina*, 811 F. Supp. 3d at 42–49; *Ramirez Ovando*, 810 F. Supp. 3d at 1235–37; *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 894 n.33 (C.D. Cal. 2025); *Nava v. DHS*, 435 F. Supp. 3d 880, 901–04 (N.D. Ill. 2020); cf. *Ramirez v. ICE*, 310 F. Supp. 3d 7, 21–22 (D.D.C. 2018) (holding that consistent failure to apply certain factors in making individual custody decisions was a final agency action subject to APA review). The Court concludes that Defendants' practice in the District of Montana does not qualify as tentative or interlocutory in nature, rather, Defendants' policy and practice meet the criteria as a consummation of the agency's decision-making process and thereby satisfies the first requirement for judicial review. *Bennett*, 520 U.S. at 177.

**2. Whether the alleged general policies and practices have direct consequences on Plaintiffs.**

Defendants assert that Plaintiffs fail to meet the second requirement that the challenged action itself determined "rights or obligations" or provides a source "from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78. (Doc. 11 at 29.) For agency action to be "final," the "legal consequences" of the challenged action must be "direct and appreciable." *Hawkes*, 578 U.S. at 597. An internal directive can meet this test if it "b[inds] [agency] staff" to act a certain way that affects third parties. *Texas*, 597 U.S. at 808-09; *cf. Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (no final agency action where agency letter did not "[c]ompel[] [any] one to do anything").

The Court finds the current controversy and *Indep. Equip Dealers Ass'n* present much different factual allegations. The EPA simply wrote a letter in which the EPA disagreed with another association's interpretation of a regulation. *Indep. Equip Dealers Ass'n*, 372 F.3d at 421. The D.C. Circuit concluded that an EPA letter remained unreviewable because the letter did not qualify as a "final agency action." *Indep. Equip Dealers Ass'n*, 372 F.3d at 428. Defendants are actively violating federal law and people's due process rights which differs greatly from an alleged incorrect interpretation in standalone letter.

In summary, Defendants argue that Plaintiffs fail to show that Defendants have made a decision that assuredly will affect Plaintiffs if immigration law enforcement agents encounter them. (Doc. 11 at 29.) Defendants support this argument by alleging Plaintiffs fail to show that all warrantless arrests in Montana are made without assessing the statutory factors of § 1357(a)(2). (*Id.*) The Court remains unpersuaded by these arguments.

Defendants' actions have caused Plaintiffs to be unlawfully apprehended and detained. Plaintiffs argue that this outcome qualifies as a direct and appreciable legal consequence to establish finality. (Doc. 14 at 14.) Plaintiffs cite case law supporting this contention. *See Nava*, 435 F. Supp. 3d at 903 (plaintiffs sufficiently pled final agency action when they "allege[d] that ICE's decisions caused [plaintiffs] and others similarly situated to lose their freedom"); *M-J-M-A-,* 822 F.

Supp. 3d at 1181 (finding that Defendants' unlawful warrantless arrest policy "leads not only to unlawful detention and deportation, but also deprives victims of precious time away from their families, their work, and the ability to support their families"); *cf. Ramirez*, 310 F. Supp. 3d at 23 (finding agency action "had immediate and significant legal consequences for Plaintiffs," as it caused them to "bear detention in more restrictive settings than Defendants might otherwise deem appropriate").

The Court finds that Plaintiffs' allegations establish Defendants have a policy and practice of making unlawful arrests. The Court further finds that the unlawful apprehension and subsequent detention qualify as a direct and appreciable legal consequence following the agency's actions. Defendants' pattern and practice of arresting people without a warrant and without the required probable cause determinations amounts to a final agency action because it affects fundamental individual rights in real time. *M-J-M-A-*, 822 F. Supp. 3d at 1182.

**D. Whether the proposed injunction is permissible and appropriate.**

Defendants argue that Plaintiffs seek an impermissibly vague "follow the law injunction." (Doc. 11 at 30.) Plaintiffs seek an order requiring that Defendants "comply with federal law by making an individualized probable cause determination that a person is (1) in violation of civil immigration law and (2) presents a flight risk, before conducting a warrantless immigration arrest." (Doc. 6

at 10.) Defendants argue that this request merely restates § 1357(a)(2) without any further explanation specifying what Defendants are prohibited from doing. Defendants further argue that with no particularized contours for probable cause, the Court's injunction would provide an unqualified weapon for Plaintiffs to chill federal immigration officers' ability to perform their duties effectively. *Cf. Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiffs argue that an injunction prohibiting Defendants' policy and practice of unlawful warrantless arrests remains permissible and appropriate. (Doc. 14 at 15.) *See Escobar Molina*, 811 F. Supp. 3d at 62 ("An injunction directing defendants to cease applying such policy and instead to instruct their agents to arrest members of the plaintiff class in compliance with the law—i.e., only after establishing probable cause that they are likely to escape before a warrant can be obtained—is entirely reasonable and sufficiently specific for defendants to follow"). Plaintiffs request the Court to order Defendants to follow the requirements of § 1357(a)(2) when conducting warrantless arrests.

The Court remains unpersuaded by Defendants' arguments. The Court would not consider Plaintiffs' request if Defendants simply followed the requirements of § 1357(a)(2). Plaintiffs' request remains simple. Defendants must document the flight risk assessment pursuant to § 1357(a)(2) and refrain from

making unlawful warrantless arrests. For these reasons, the Court finds Plaintiffs' request permissible and appropriate.

**E. Whether Plaintiffs are likely to succeed on their claims.**

Now that the Court has addressed all standing and jurisdictional arguments, the Court next will evaluate Plaintiffs' likelihood of success on their claims. The APA statute enables courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with law." *M-J-M-A-,* 822 F. Supp. at 1147; 5 U.S.C. § 706(2)(A). Plaintiffs further present a claim to hold unlawful and set aside Defendants' policy as contrary to due process pursuant to 5 U.S.C. § 706(2)(B). (Doc. 1 at 41.)

As previously noted, the INA permits officers to make warrantless arrests when the officer has probable cause to believe that (1) the person "is in the United States in violation of the law; and (2) that the person "is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). Probable cause determinations must be based on facts specific to the arrested person and must be known *before* the arrest. *M-J-M-A-*, 822 F. Supp. 1147 at 1182; (citing *Ybarra*, 444 U.S. at 91). The Court finds Defendants' policy and practice of engaging in warrantless arrests runs contrary to the INA and its implementing regulations. 5 U.S.C. § 706(2)(A).

Plaintiffs have shown a high likelihood of success on the merits of their claims that Defendants' practice of arresting people without warrants and without a

pre-arrest individualized flight risk assessment remains contrary to law. The Court need not analyze in depth whether Defendants' practice of warrantless arrests without a proper flight risk analysis violates the law. The Court further agrees with other courts that reasoned the same practice likely violates the law. *Escobar Molina*, 811 F. Supp. 3d at 49; *Ramierz*, 810 F. Supp. 3d at 1237; *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 806 F. Supp. 3d, 843 (N.D. Ill. 2025), aff'd in part sub nom. *Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 175 F.4th 828 (7th Cir. 2026). The Court concludes Plaintiffs are likely to succeed on the merits of each of their APA claims. Defendants are likely engaging in the unlawful practice of conducting warrantless arrests without a proper pre-arrest individualized probable cause determination of a person's likelihood of escape and thereby actively are violating the APA. 5 U.S.C. § 706(2)(A) & (B).

Plaintiffs further allege a violation of the *Accardi* doctrine and a policy and practice of violating *Nava* Broadcast Policy on Warrantless Arrests and Vehicle Stops. (Doc. 1 at 42.) ICE issued a nationwide "Broadcast Statement of Policy" prescribing that "officers are to conduct warrantless arrests in a manner consistent with 8 U.S.C. § 1357(a)(2). *M-J-M-A-,* 822 F. Supp. 3d at 1172 (quoting *Castanon Nava*, 806 F. Supp. 3d at 837-838). In particular, before concluding whether the person is at risk of fleeing before a warrant is obtained, DHS agents must consider "the totality of circumstances," including the following factors: (1) "ability to

determine the individual's identity," (2) "knowledge of that individual's prior escapes or evasions of immigration authorities," (3) "attempted flight",(4) "ties to the community (such as a family, home, or employment) or lack thereof," or (5) "other specific circumstances that weigh in favor or against a reasonable belief that the subject is likely to abscond." *Castañon Nava*, No. 18-cv-3757, (Doc. 155-1 at 17–18 Settlement Agreement) (N.D. Ill. Feb. 7, 2022).

The *Accardi* doctrine is based upon the premise that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *M-J-M-A- v. Hermosillo*, No. 25-cv-02011-MTK, 2026 WL 257551, at *6 (D. Or. August 31, 2026) (quoting *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004)). The Broadcast Statement "arose out of a binding court settlement that required ICE officers to consider specific factors before effectuating a warrantless arrest." *M-J-M-A-,* 2026 WL 2575511, at *6. The *Nava* Broadcast Statement indicates that it applied to "all arrests effected under 8 U.S.C. § 1357(a)(2)" therefore including arrests effectuated by CBP. *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 738 (E.D. Cal. 2025). The Court concludes, therefore, that Plaintiffs are likely to succeed in showing that the policy and practice violates the *Nava* Broadcast Statement thereby violating the APA.

## II. Whether Plaintiffs will face irreparable harm absent an injunction.

Defendants argue that Plaintiffs seek an injunction (1) to prevent past harm from reoccurring; and (2) Plaintiff's belief that they will be arrested without probable cause qualifies as speculative. (Doc. 11 at 32.) Plaintiffs counter that Defendants' argument fails for the same reasons already alleged. The practice and policy of Defendants establish that Plaintiffs face concrete future harm of immigration officers unlawfully arresting Plaintiffs.

Irreparable harm involves "harm for which there is no adequate legal remedy." *M-J-M-A-*, 822 F. Supp. 3d at 1183 (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014.) "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *M-J-M-A-*, 822 F. Supp. 3d at 1183 (quoting *Melendres*, 695 F.3d at 1002). Plaintiffs and putative class members face irreparable harm due to Defendants' pattern and practice of warrantless arrests without individualized probable cause determinations. All four named Plaintiffs were unlawfully detained pursuant to this policy.

The Court further finds that Defendants continually will violate the law absent injunctive relief. Plaintiffs further allege that Defendants use warrantless arrests as part of an effort to coerce people into voluntarily deporting. (Doc. 6 at 33.) The Court further finds that Defendants will continue to coerce people who are arrested but who may nonetheless have meritorious claims for habeas or other

release, into self-deporting and giving up those claims, without an opportunity to speak with counsel, and based on misinformation about the effects of proceeding through the immigration process. *See e.g.,* (Doc. 6-4. at ¶¶ 21–27, 29–31); (Doc. 6-3 at¶¶ 56–60.)

Defendants argue that any future harm proves speculative but fail to indicate whether Defendants have scaled back their practices or brought them into compliance with the law. Defendants continue to unlawfully arrest people like Plaintiffs. Accordingly, the Court finds that Plaintiffs and putative class members have and will continue to suffer irreparable physical, financial, and emotional harm if the Court fails to enjoin Defendants' unlawful warrantless arrest practice.

### III. Whether the balance of equities or the public interest favor a preliminary injunction.

The final two preliminary injunction factors, the public interest and the balance of the equities, "merge" when the Executive Branch is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In analyzing these factors, courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991). Defendants argue that the public interest in enforcing the immigration laws is "substantial[]." *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-57 (1976). Defendants further argue that a person's unlawful presence in the United States represents a continuing violation of the law and the Government

has a legitimate and significant interest in the enforcement of immigration laws. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1047 (1984).

The Court agrees with Defendants' assertions regarding immigration law and that enforcing immigration laws remains important public policy. The Court emphasizes, however, that no matter how significant the Government's interest in enforcing immigrations laws, Defendants are still required to follow federal law. Defendants cannot arrest people who Defendants believe are in the country illegally without either (1) obtaining an arrest warrant; or (2) performing a pre-arrest individualized flight risk determination. *See* 8 U.S.C. § 1357(a)(2).

Defendants repeatedly have shown they fail to abide by these requirements while making arrests in the District of Montana. The Court further concludes that "it is always in the public interest to prevent the violation of a party's constitutional rights." *M-J-M-A-*, 822 F.Supp. 3d at 1183; (quoting *Melendres,* 695 F. 3d at 1002). For these reasons, the Court finds that the balance of equities and public interest tip sharply in Plaintiffs' favor. A preliminary injunction serves as an appropriate remedy at this stage of litigation.

Defendants lastly argue that the reporting and production requirements Plaintiffs seek to impose for every applicable arrest in Montana. (Doc. 11 at 34 citing Doc. 6 at 37-38 ¶¶ 4-5), would strain and disproportionately burden the Government's resources. (Doc. 11 at 34.) Plaintiffs' request that the documentation

be provided to their counsel within 48 hours of each warrantless arrest proves particularly concerning to Defendants. (*Id.*) Defendants argue such a short timeline would be almost impossible to meet in every instance. (*Id.*) Plaintiffs concede that even if this part of their proposed relief fails, the injunction shall not be entirely denied. (Doc. 14 at 17.) The Court concludes that public interest demands Defendants to produce the arrest documentation to Plaintiffs' counsel within 72 hours of any warrantless arrest. The Court directs Defendants to seek relief if the 72-hour requirement proves to be an impermissible burden.

## CONCLUSION

The Court **hereby GRANTS** Plaintiffs' motion for a TRO, Preliminary Injunction, and 5 U.S.C. § 706 stay. (Doc.5.) The Court finds that ample evidence in this case demonstrates a high likelihood that Defendants are engaging in a pattern and practice of unlawful conduct in the District of Montana that will continue to harm Plaintiffs absent preliminary relief. The Court grants Plaintiff's Motion for a TRO, Preliminary Injunction, and 706 stay and Plaintiffs' accoupling requests (1) – (6).

## ORDER

Accordingly, it is hereby **ORDERED** that:

1. Defendants are enjoined from enforcing their policy or practice of making warrantless civil immigration arrests in the District of Montana without a

pre-arrest individualized determination by the arresting agent of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii);

2. Defendants' policy or practice of making warrantless civil immigration arrests in the District of Montana without a proper pre-arrest individualized determination by the arresting agent of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), is stayed.

3. Defendants shall promptly transmit this Order to Defendants' officers, employees, agents, and contractors who have responsibilities related to the subject matter of this Order.

4. Defendants and their agents who conduct warrantless civil immigration arrests in the District of Montana shall, as soon as practicable, document the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form. This documentation shall include specific, particularized facts that supported the officer's pre-arrest probable cause to believe that the person is likely to escape before a warrant can be obtained, including the following facts that are consistent with 8 U.S.C. § 1357(a)(2): "that the alien was arrested without a warrant;" "the location of the arrest and whether this location was a place of business, residence, vehicle, or a public area;" "the alien's ties to the

community, if known at the time of arrest, including family, home, or employment;" and "the specific, particularized facts supporting the conclusion that the alien was likely to escape before a warrant could be obtained." The documentation shall include the date and time of the arrest, and the date and time the officer completed the documentation. In describing the individualized assessment of escape risk in the documentation ordered above, specific details as to the person being arrested must be provided such that the use of boilerplate language may be deemed indicative of noncompliance.

5. Defendants or Defendants' agents shall provide this documentation and the arrested individual's I-213 form to Plaintiffs' Counsel within 72 hours of any warrantless arrest.

6. Defendants are enjoined from transferring any person subject to a warrantless immigration arrest outside the District of Montana for seven days to preserve this Court's jurisdiction to enforce its orders.

As a final matter, there is no likelihood that Defendants will suffer harm from an injunction that requires them to comply with the law. In the interests of justice, Plaintiffs need not provide security, and the Court waives all requirements under Fed. R. Civ. P. 65(c). *InSinkErator, LLC v. Joneca Co., LLC*, 163 F.4th 608, 623 (9th Cir. 2025) (courts have "wide discretion in setting the amount of a security bond").

DATED this 25th day of November 2026.

Brian Morris, Chief District Judge
United States District Court